UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL ROSIE LOPEZ TREVIZO,<br><br>Petitioner,<br><br>v.<br><br>DEAN BORDERS,<br><br>Respondent. | No. 1:16-cv-01845-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding with court-appointed counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On December 8, 2016, Petitioner filed a habeas petition in this Court challenging a Tulare County Superior Court conviction for multiple burglaries. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.      FACTUAL AND PROCEDURAL HISTORY**

Between May 19, 2004, and June 9, 2004, Petitioner committed six burglaries of inhabited dwellings in Tulare County. (Doc. 16-1 at 2-14.) At the time Petitioner committed those burglaries, she was serving a five-year probation term for five burglary convictions sustained in January 2004. (Doc. 16-2 at 6-7.) On August 11, 2004, Petitioner pled no contest to the charges. (Doc. 16-2 at 6-12.) The court accepted the plea as knowingly, voluntarily, and intelligently

1

entered. (Doc. 16-2 at 18.)  In exchange for her plea, one of the prior strike convictions was dismissed and Petitioner was sentenced to 31 years and 8 months. (LD 16-2 at 3-4, 11, 20; 16-3; 16-4.)  Petitioner did not appeal the judgment.

Petitioner filed several post-conviction collateral challenges to her sentence in the state courts.  In 2014, Petitioner filed petitions for resentencing under Proposition 47 based on her probation violations.  Those petitions were granted on December 10, 2014, and January 26, 2015.  In one case, Petitioner's charge was reduced to a misdemeanor and Petitioner was discharged as to that case.  In the second case, Petitioner's charge was reduced to a misdemeanor and the parole period was waived.  (LD[1] 2-6.)

On March 2, 2015, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on April 23, 2015.  (LD 7-8.)

On April 1, 2015, Petitioner filed a petition for writ of habeas corpus with the Superior Court, which was denied on May 14, 2015.  (LD 9-10.)

On July 8, 2015, Petitioner filed a petition for writ of habeas corpus with the Superior Court, which was denied on August 5, 2015.  (LD 11-12.)

On August 11, 2015, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal, which was denied on October 19, 2015.  (LD 13-14.)

On November 1, 2015, Petitioner filed a petition for writ of habeas corpus with the Superior Court, which was denied on November 17, 2015.  (LD 15-16.)

On November 1, 2015, Petitioner submitted a petition for writ of habeas corpus with the Superior Court, which was denied on December 17, 2015.  (LD 17.)

On February 29, 2016 Petitioner filed a request to amend her petition for writ of habeas corpus with the Superior Court, which was denied on March 10, 2016.  (LD 18-19.)

On January 15, 2016, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal, which was denied on February 10, 2016.  (LD 20-21.)

On March 28, 2016, Petitioner filed a petition for writ of habeas corpus with the Court of

---

[1] "LD" refers to the documents lodged by Respondent with his response.

Appeal, which was denied on May 20, 2016. (LD 22-23.)

On June 5, 2016, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court ("Supreme Court"), which was denied on July 20, 2016. (LD 24-25.)

On June 26, 2016, Petitioner filed a petition for resentencing under Proposition 47 for her burglary charges with the Superior Court. (LD 26.) It is not clear from the record if this petition was resolved.

On August 8, 2016, Petitioner filed a petition for writ of habeas corpus with the Superior Court, which was denied on August 26, 2016. (LD 27-28.)

On August 26, 2016, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal, which was denied on September 29, 2016. (LD 29-30.)

On October 6, 2016, Petitioner filed a petition for writ of habeas corpus with the Supreme Court, which was denied on November 30, 2016. (LD 31-32.)

On December 8, 2016, Petitioner filed her petition before this Court. On January 3, 2017, the Court granted Petitioner's request for appointment of counsel, because she provided documentation of a hearing impairment and possible developmental disability. (Doc. 8.) Petitioner, through counsel, filed a first amended petition for writ of habeas corpus on August 2, 2017. (Doc. 16.) Respondent moved to dismiss the petition as untimely on December 8, 2017. (Doc. 27.) On March 31, 2019, the Court found the petition to be untimely and granted Respondent's motion to dismiss. (Doc. 50.) Petitioner appealed and the Ninth Circuit issued a limited remand to allow the District Court to determine in the first instance whether Petitioner's habeas petition was timely in light of a January 26, 2015, state court decision. (Doc. 56.) On March 5, 2021, the District Court determined that the petition was timely filed. (Doc. 63.) Accordingly, Respondent was directed to file a response. On July 9, 2021, Respondent filed an answer to the petition. (Doc. 71.) On September 23, 2021, Petitioner filed a traverse to the answer. (Doc. 76.)

**II.     DISCUSSION**

A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

3

pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

      B.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of her claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable

application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

In a case where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002). "[A]lthough

we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

### C. Review of Petition

Petitioner presents three grounds for relief challenging her plea: 1) Defense counsel rendered ineffective assistance by failing to ensure that Petitioner heard and understood the criminal charges and consequences of a plea before Petitioner pled guilty as charged; 2) Defense counsel rendered ineffective assistance by failing to attempt to plea bargain the case to something less than 31 years, 8 months, given the nature and history of Petitioner's cognitive defects at the time of the crimes; and 3) Petitioner's guilty plea was not knowing or voluntary in violation of her federal due process rights.

#### 1. Ineffective Assistance of Counsel

In her first two claims, Petitioner alleges defense counsel rendered ineffective assistance by: 1) failing to ensure that Petitioner heard and understood the criminal charges and consequences of the plea; and 2) failing to attempt to plea bargain. Petitioner did not raise these claims to the highest state court, and thus they are unexhausted. In any case, they are plainly without merit and barred by her guilty plea.

##### a. Exhaustion

A petitioner who is in state custody and wishes to collaterally challenge her conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

In her petitions to the California Supreme Court, Petitioner never asserted that defense counsel rendered ineffective assistance by failing to retain mental health experts. Petitioner generally alleged that counsel should have raised mental health issues in response to law enforcement investigatory tactics, see LD 31 at 6-8, but did not claim counsel should have retained experts. In her traverse, Petitioner asserts that she raised the specific bases for her claims in her petition before the Tulare County Superior Court. (Doc. 76 at 5.) Petitioner did not, however, petition for review of the lower court's decision. She filed original petitions for writ of habeas corpus in the California Supreme Court, and in such cases, the California Supreme Court does not review the lower court's decisions. Robinson v. Lewis, 9 Cal.5th 883, 897 (2020). The California Supreme Court reviewed the original petitions, and in neither petition did Petitioner claim ineffective assistance for failing to retain mental health experts. Petitioner also did not claim that counsel was ineffective for failing to obtain a better plea agreement in either petition. Therefore, the claims are unexhausted. In any event, as discussed below, the claims are meritless.

### b. Claims Barred by Plea Agreement

Respondent is correct that the two claims are barred by virtue of the no contest plea. The Supreme Court has held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also Menna v. New York, 423 U.S. 61, 62 n. 2 (1975); United States v. Foreman, 329 F.3d 1037, 1038-39 (9th Cir. 2003) (precluding pre-plea motion for substitute counsel claim); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) (as amended) (foreclosing pre-plea ineffective assistance of counsel claim); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (*per curiam*) (precluding denial of counsel at critical stage and violation of Speedy Trial Act claims). Petitioner must show that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Petitioner does not claim that counsel's advice was incorrect or that she would have proceeded to trial but for counsel's alleged errors. As noted by Respondent, Petitioner is merely dissatisfied with the length of the sentence she received. She alleges in claim one that counsel should have obtained additional mental health experts who could have better assisted in communicating the terms of the plea to Petitioner, and in claim two that counsel should have attempted to plea bargain for a better sentence. These claims do not rise to an adequate challenge under Tollett in federal habeas review. Petitioner makes no showing that she would have fared better in plea negotiations but for counsel's alleged errors. Petitioner also fails to present a sufficient claim of prejudice, since no alternative plea bargain was offered by the prosecution, and there is no showing that any such offer would have been made or that the trial court would have accepted it. Petitioner's only cognizable claim is that her plea was not knowing and intelligent, which is her third claim for relief addressed below. In any case, the first two claims are meritless, as discussed below.

  c. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, she must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that she suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what

counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

    d. Analysis

In claim one, Petitioner merely speculates that additional mental health experts would have better assisted counsel in his communications with Petitioner. She makes no showing that counsel could not adequately communicate with Petitioner. The record also belies Petitioner's claim. Notes by defense staff reveal that Petitioner was examined by a mental health expert and found to be competent. (Doc. 16-6 at 5.) Petitioner makes no showing and offers no authority for the proposition that counsel should not have relied on that expert but obtained additional experts. Further, counsel knew of Petitioner's hearing difficulties and brought it to the court's attention. Counsel advised the trial court that Petitioner had been provided with a hearing aid and represented that Petitioner understood the charges and consequences of the plea. (Doc. 16-2 at 14-15.) Discussions in open court with Petitioner revealed no difficulties by Petitioner in understanding the charges or the consequences of the plea. Thus, Petitioner has not shown that counsel did not act competently by failing to secure additional mental health experts, nor has she

demonstrated prejudice resulting therefrom.

Likewise, Petitioner only speculates that counsel could have obtained a better plea bargain. There is no showing that a better plea agreement could be had. On the contrary, the record shows that Petitioner obtained the best sentence possible. The prosecution did not offer the sentence Petitioner received, and in fact objected to the court's dismissal of a strike which resulted in the lesser sentence. (Doc. 16-2 at 3, 5.) Thus, Petitioner's contention that the prosecutor would have offered a better sentence had defense counsel only tried harder is meritless. Similarly, Petitioner cannot show that the trial court would have accepted a more lenient sentence had the prosecutor offered one. The trial court had already exercised its discretion to reduce Petitioner's sentence by dismissing a strike and declined to further reduce the sentence in light of Petitioner's prior history of burglaries. (Doc. 16-3 at 3.) Again, Petitioner fails to show that counsel erred, or that she was prejudiced from counsel's alleged error.

Petitioner fails to show that the state court rejections were unreasonable applications of Strickland. The claims should be denied.

### 2. Knowing and Intelligent Plea

In claim three, Petitioner alleges her plea was unknowing and involuntary. She alleges that counsel failed to explain the offenses and the consequences of the plea in a way that Petitioner could understand. She further claims that she could not hear what the trial court was saying. She alleges that she was merely following counsel's prompts to say "yes" or "no" depending on prearranged signals from counsel.

#### a. Background

As previously noted, Petitioner was on probation for five burglaries at the time she committed the six burglaries at issue here. Those previous convictions were less than six months old at the time of her current offenses. (Doc. 16-1 at 2-14.)

Petitioner was interviewed on February 4, 2003, during investigation into her five previous burglaries. (LD 18 at 76-77.) Petitioner admitted that she had been arrested for stealing her mother's vehicle. She stated that she had taken the vehicle, a 1991 Explorer, driven it around town and then returned it. When asked about a second vehicle, Petitioner described the vehicle in

10

1    detail including the model (two-door 1984 Regal), color (gray), and owner (Romero), but she
2    denied stealing it. Petitioner told the investigator where Romero lived and described him as a tall
3    Hispanic male, approximately 32-33 years of age. Petitioner's responses were detailed and
4    oriented, and the investigator reported no issues in communicating with her. Subsequently,
5    Petitioner pleaded no contest to car theft, possessing stolen property, and five burglaries. (Doc.
6    16-1 at 2-14.)

7    During the investigation into the burglaries at issue in this case, Petitioner again agreed to
8    cooperate with law enforcement and provided a taped statement. (Doc. 72-1 at 238-241.)
9    Petitioner was forthright in admitting she had committed several burglaries. She stated she had
10   committed three burglaries at the Orosi Mobile Home Estates located off Road 128 across from
11   the Golden Valley School in Orosi. Petitioner stated she could not remember the numbers of the
12   mobile homes she had burglarized but she offered to direct the investigator to the locations of
13   each mobile home. Petitioner stated that she burglarized the first mobile home approximately two
14   weeks earlier. At approximately midnight to 1:00 a.m., she entered the home through a window
15   that was unlocked by removing the screen and pushing the window open. Upon entering, she
16   searched the home and located a number of quarters and silver dollars in the living room inside a
17   cabinet. She also drank a cup of juice that was on the kitchen table. Petitioner stated she had
18   taken approximately $40 in coins and denied taking anything else. She then left the residence
19   through the open window.

20   Petitioner stated she broke into the second mobile home by taking off a window screen
21   and pushing the window open. She walked through the residence and discovered an old man and
22   old lady sleeping in a bedroom. She found a pair of pants located in the bedroom and removed
23   the wallet. She took the wallet outside, removed $75 and then placed the wallet in the front yard
24   of the residence.

25   Petitioner stated she did not recall the time of the third burglary but it was late at night.
26   She stated she was looking through the window of a mobile home and saw an old lady sitting in
27   her living room reading a book. She then went to another window where she spotted the lady's
28   purse located on a desk. She removed the screen off the open window and grabbed the purse.

1 She then fled with the purse because she believed the lady had seen her. She took the purse to
2 Palm School in Orosi where she looked through the purse for money. She did not find any money
3 so she returned the purse to the residence approximately one-half hour later. She left the purse on
4 the back doorsteps.

5     Petitioner also admitted to committing a burglary of "an old lad[y's] house." Petitioner
6 described that house as being pink and located on David Road in Orosi. She stated she
7 committed that burglary the previous Sunday night. She stated she had walked past the house
8 earlier in the day and saw the lady outside the house. She admitted that she returned later in the
9 early morning hours and broke into the residence by using a screwdriver to break a window near
10 the front door. Petitioner stated she entered the residence through the window and then searched
11 the residence for money to buy drugs. She noted that a small dog began to bark, which caused
12 her to flee the residence. She stated she did not take anything from the residence.

13     Petitioner admitted that she then went down the street and broke into another residence.
14 She stated she had walked into the backyard of a residence located approximately two or three
15 houses down from the old lady's residence and entered that residence through a kitchen window
16 which was unlocked. She stated she had removed the screen, pushed the kitchen window open
17 and entered the house. Once inside, she found a purse on top of the refrigerator in the kitchen.
18 She took the purse and walked out the door leading to the garage. She looked through the purse
19 and took out a $100 bill and a $20 bill. Petitioner then walked back inside the residence and
20 placed the purse on the kitchen table. She then left the residence through the door leading to the
21 garage. She denied taking anything else from that residence.

22     Petitioner provided further information to the investigator. When asked which shoes she
23 had been wearing, Petitioner pointed out a pair of low-top "Route 66" brand shoes, stating she
24 believed she had been wearing those shoes during the burglaries. The investigator then drove
25 Petitioner to the Orosi area by David Road. Petitioner pointed out five of the residences and
26 advised the investigator which residences corresponded to the burglaries she had committed.

27     Again, Petitioner was forthcoming, very detailed and oriented in her responses. The
28 officer noted no difficulty in communicating with Petitioner either during the taped interview or

during the car ride.

Prior to plea proceedings, Petitioner's counsel traveled to her detention facility and spent "a good hour" with her going over the charges. (Doc. 16-2 at 14.) Counsel stated, "We went and we talked about everything and I felt comfortable that [s]he understood the nature of the charges, the consequences of the plea." (Doc. 16-2 at 15.) Counsel stated he again talked to her that morning at length "and told [her] the indicated sentence and [s]he was aware, again, of all the charges, the consequences and I feel that [s]he adequately understands and - - and I believe [s]he's making a knowing and intelligent and voluntary waiver of [her] rights at this time." (Doc. 16-2 at 15.)

The plea hearing took place in chambers because the court preferred "to sit down with [Petitioner] and go over this as deeply as possible and this makes it in chambers less - - I think an easier method." (Doc. 16-2 at 3.) Counsel for Petitioner then advised the court that Petitioner had her hearing aid and "can hear pretty well." (Doc. 16-2 at 3.) The court then went over the charges and discussed the length of the sentence. (Doc. 16-2 at 3-9.) The judge explained that Petitioner would be serving a sentence of 31 years and 8 months. (Doc. 16-2 at 4.) The judge further explained that Petitioner could earn good-time/work-time credits at a rate of 15 percent, so that Petitioner would have to serve at least 27 to 28 years actual custody on the sentence. (Doc. 16-2 at 4.) Petitioner repeatedly stated she understood. (Doc. 16-2 at 3-4.) The judge asked Petitioner her age and Petitioner stated she was 24. (Doc. 16-2 at 5.) The judge asked Petitioner if she understood that by pleading no contest to the charges, that she would be about 51 to 52 years of age when she would get out of prison, and Petitioner stated she understood. (Doc. 16-2 at 5.) The judge thoroughly went over all of Petitioner's rights and asked Petitioner if she understood that she was giving up those rights by pleading no contest. (Doc. 16-2 at 9-12.) Petitioner repeatedly stated she understood. (Doc. 16-2 at 9-12.) The judge asked Petitioner if she had ample time to speak with her attorney and whether she understood what he had told her, and Petitioner stated, "Yeah." (Doc 16-2 at 12.) The judge asked Petitioner if she had any further questions of her attorney or the court, and Petitioner stated, "No." (Doc. 16-2 at 12.)

The record shows that Petitioner's responses were oriented, appropriate, and detailed

1  when necessary.  Petitioner answered in the affirmative when asked if she understood the court's

2  explanations and instructions.  (Doc. 16-2 at 3-18.)  She provided her age when asked (Court: "- -

3  how old are you now?" Petitioner: "I'm 24.").  (Doc. 16-2 at 5.)  She answered in the negative

4  when appropriate (Court: "Do you have any questions of him or the court about what is

5  happening here today?" Petitioner: "No.").  (Doc. 16-2 at 11.)  The court found that the plea was

6  knowingly, voluntarily and intelligently entered.  (Doc. 16-2 at 18.)

          b.       Legal Standard

The Supreme Court has held that, for a guilty plea to be valid, it must be knowing and intelligent, which means the defendant must be informed that she has the right against self-incrimination, the right to a trial by jury, and the right to confront her accusers; and she must affirmatively waive those rights. Boykin v. Alabama, 395 U.S. 238, 243-44 (1969). Further, the plea must be given with sufficient awareness of the relevant circumstances and likely consequences. Mabry v. Johnson, 467 U.S. 504, 509 (1984); Brady v. United States, 397 U.S. 742, 747-48 (1970). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "A plea of guilty is voluntary only if it is entered by one fully aware of the direct consequences of [her] plea." Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (internal quotations and citations omitted). A guilty plea obtained through coercion is involuntary. Brady, 397 U.S. at 750; United States v. Hernandez, 203 F.3d 614, 619, 626 (9th Cir. 2000); Osborn v. Shillinger, 997 F.2d 1324, 1327 (10th Cir. 1993). "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." Godinez v. Moran, 509 U.S. 389, 401 n. 12 (1993) (as amended). The relevant inquiry is whether petitioner's guilty plea was voluntary and intelligent under the totality of the circumstances. Alford, 400 U.S. at 31; Brady, 397 U.S. at 749. Petitioner must present sufficient evidence to defeat the "formidable" presumption of verity accorded to plea proceedings. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

### c. Analysis

Petitioner fails to overcome the presumption that her guilty plea was voluntary and intelligent. As an initial matter, Petitioner cannot show that her plea was unknowing. At the time she was arrested, she was on parole for similar crimes of which she was convicted less than six months prior. In both instances, Petitioner pleaded no contest and readily spoke to and assisted law enforcement in their investigation. Petitioner was forthright and detailed in her descriptions of what, where, how, and why she took certain items. In all instances, law enforcement never noted any difficulty in communicating with Petitioner. For the current crimes, defense counsel represented that he met with Petitioner on two occasions and thoroughly went over the charges and consequences of the plea. Finally, the judge held the sentencing hearing in chambers in order to verify that the plea was knowing and intelligent. Based on the above, a rational jurist could conclude that Petitioner understood the charges.

For the same reasons, Petitioner fails to show that she was unaware of the consequences of her plea. Counsel represented that he went over the consequences in detail, and that she understood the sentence she was facing. Moreover, the court went over the consequences of the plea in great detail on several occasions. In one instance, Petitioner responded with the actual time she believed she would be serving:

> The Court: --- in this matter, and you understand that - - that you're not gonna get a chance to withdraw it and you're gonna be there for over 25 years. Do you understand that?
>
> The Defendant: Yeah.
>
> The Court: Do you have any questions about the rights you waived or what can happen to you, how much time you're gonna get?
>
> The Defendant: 25 years.
>
> The Court: Yeah. You're gonna get more than 25 years. You're gonna get 31 years 8 months, but you only get 15 percent off that so that's gonna be approximately between four and five years plus with your time you've got about 26 years - -
>
> The Defendant: Yeah.
>
> The Court: - - or 27 years left to do. Do you understand that?
>
> The Defendant: Yeah.

1  (Doc. 16-2 at 17-18.)

2　　　　On another occasion, the court asked Petitioner if she understood how old she would be
3  when she would be released:

4　　　　　The Court: Okay. And you understand - - how old are you now?

5　　　　　The Defendant: I'm 24.

6　　　　　The Court: Okay. You're gonna be - - you're gonna be about 51 or 52 years old when you get out of state prison. Do you understand that?
7

8　　　　　The Defendant: (Nodding head.)

9　　　　　The Court: Is that right? 28 plus 24 is 52 years. Do you understand that?

　　　　　The Defendant: Yeah.
10

11 (Doc. 16-2 at 5.)

12　　　　Twice when asked by the court whether Petitioner had any questions, Petitioner
13 responded, "No." (Doc. 16-2 at 12, 17.) From the above, a fairminded jurist could conclude that
14 Petitioner understood the consequences of her plea.

15　　　　Petitioner nevertheless contends that she was hearing-impaired and suffered from
16 comprehension problems. She alleges that counsel told Petitioner "to watch him for the correct
17 response: when trial counsel nodded petitioner said 'yes,' and when trial counsel shook his head
18 petitioner said 'no.'" (Doc. 16 at 13.) At the plea hearing, defense counsel acknowledged
19 Petitioner's hearing impairment and represented that Petitioner had been provided a hearing aid
20 and was able to hear properly. Petitioner also answered more than merely "yes" and "no" to the
21 questions. Petitioner stated her age and the length of the actual sentence she expected to serve.
22 Her answers were oriented, and there is no evidence that she had any difficulty communicating or
23 understanding. Moreover, in light of the record of 1) Petitioner's cooperation and discussions
24 with law enforcement during the investigations into the underlying burglaries and prior
25 burglaries, 2) Petitioner's experiences with the legal system in her previous, recent and similar
26 convictions, 3) defense counsel's representations as to his discussions with Petitioner, and 4) the
27 lengthy questioning by the trial court at the plea hearing, Petitioner's allegation that she was
28 merely answering "yes" and "no" in response to defense counsel's head-nodding strains credulity.

As Respondent correctly points out, Petitioner's allegation calls for a conclusion that counsel perpetrated a fraud on the court, committed perjury, and that the trial judge was too inept to notice such an obvious scheme. From the record, a rational jurist could easily conclude that the allegation was groundless.

With respect to Petitioner's claim of mental incompetence, the record again fails to support her allegation. Petitioner was seen by a mental health expert and a psychological evaluation was completed. (Doc. 16-6 at 5.) According to the expert, Petitioner was "not mentally retarded nor was [s]he found to have a condition closely related to mental retardation or require treatment similar to that required for mentally retarded individuals." (Doc. 16-6 at 5.) Prior to trial, defense counsel was concerned of possible mental incompetence and requested an evaluation, but Petitioner was found competent. (Doc. 16-6 at 5.) Connie Offit was a staff member of the Department of Rehabilitation who was very familiar with Petitioner, having worked with her for 5 to 6 years. (Doc. 16-6 at 4.) According to Ms. Offit, Petitioner graduated from high school with decent grades. (Doc. 16-6 at 4.) She stated Petitioner was "very bright and capable of adapting," although she had a "serious hearing problem." (Doc. 16-6 at 4.) She stated that Petitioner "was very employable and was easily placed"; she recalled that "[s]he had a job with McDonalds and did very well because [s]he is very bright and can lip read." (Doc. 16-6 at 4.) Although counsel initially expressed doubt as to Petitioner's competence, he was satisfied after Petitioner had been provided a hearing aid, and after which he had two meetings with Petitioner where he went over the charges and consequences of the plea. (Doc. 16-2 at 14-15.) In light of the record, Petitioner fails to show her claim of incompetence to be valid. She was also not prejudiced.

Petitioner pleaded no contest to a term of 31 years and 8 months, rather than face the strong likelihood of going to prison for the rest of her life. As previously noted, Petitioner confessed to the burglaries and provided substantial detail to law enforcement about her actions. Petitioner's fingerprints were also located at the scenes of the burglaries. The prosecution did not offer the sentence Petitioner received, and in fact objected to the court's dismissal of a strike which resulted in the lesser sentence. (Doc. 16-2 at 3, 5.) It is clear the prosecution would not

have offered a better plea deal.  It is also clear that the trial court would not have accepted a more lenient sentence had the prosecutor offered one.  The trial court had already exercised its discretion to reduce Petitioner's sentence by dismissing a strike and declined to further reduce the sentence in light of Petitioner's prior history of burglaries.  (Doc. 16-3 at 3.)

In sum, Petitioner fails to show that the state court rejection of her claim that the plea was unknowing and involuntary was contrary to, or an unreasonable application of, Supreme Court authority.  The claim should be denied.

**IV.     RECOMMENDATION**

Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within fourteen (14) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **October 18, 2021**                    /s/ *Sheila K. Oberto*
                     UNITED STATES MAGISTRATE JUDGE